REBECCA B. BOND, Chief
KATHLEEN P. WOLFE, Special Litigation Counsel
KEVIN J. KIJEWSKI, Deputy Chief
STEPHANIE M. BERGER, Trial Attorney
ELIZA DERMODY, Trial Attorney, CABN 255095
JOY LEVIN WELAN, Trial Attorney
    U.S. Department of Justice
    950 Pennsylvania Avenue, NW – 4CON
    Washington, DC 20530
    Telephone: (202) 353-5101
    Stephanie.Berger@usdoj.gov
ATTORNEYS FOR PLAINTIFF UNITED STATES

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>UMAIMA JAMALUDDIN, MD,<br><br>    Defendant. | Case No. 1:21-cv-00056-JLT |

### STIPULATION AND ORDER REGARDING DISCOVERY

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff United States of America and Defendant Umaima Jamaluddin, MD (each a "Party" and collectively, the "Parties"), have entered into this Stipulation to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action.

I.     **SUBJECT AND SCOPE OF DISCOVERY**

At this time, the Parties anticipate needing discovery on the following subjects:

1.     Any and all matters regarding the various claims asserted and allegations made by the United States; and

2.     Any and all matters regarding the defenses asserted in this action.

The Parties agree that discovery shall be completed according to the deadlines in the Court's Scheduling Order, Dkt. No. 11.

## II. PRESERVATION AND PRODUCTION OF DOCUMENTS

### A. Preservation

1. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2. This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law or pursuant to a court order other than this Stipulation and Order.

### B. Limitations on Obligation to Preserve and Produce:

Subject to Section II(D)(1) below, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

    a. Delivery or read receipts of e-mail;

    b. Logs or other data from video-conferencing (including, *e.g.*, Microsoft Teams, Skype, or Zoom) or instant messaging tools, or logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, Voice Over Internet Protocol ("VOIP"), or voicemail messages, involving, maintained by, or received by: (i) attorneys for the United States (and their staff, contractors, consultants, and experts); and/or (ii) attorneys for Defendant in this case (and their staff, contractors, consultants, and experts);

    c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

    d. Internally facing server system logs;

    e. Externally facing or hosted file sharing system logs;

1.   f.  System data from photocopiers or fax machines;
2.   g.  Auto-saved copies of electronic documents;
3.   h.  Deleted, slack, fragmented, or other data only accessible by forensics; and
4.   i.  Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

2. When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

  a.  ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *if* duplicate copies of the ESI have been preserved in another reasonably accessible location.

  b.  ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *if* duplicate copies of relevant ESI exist and have been preserved in another reasonably accessible location.  However, if a Party knows that relevant ESI exists *only* on a Party's existing Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  Nothing in this Stipulation and Order requires either Party to make changes to their existing Backup System or to create a new Backup System.  However, if either Party believes that reasonable changes to a Backup System should be made, and the Parties cannot reach agreement on those changes or on

---

[1] "Duplicate copies" in the context of ESI are copies of identical documents that contain the same metadata.  Documents that appear identical but contain different metadata are not considered duplicates and must be produced separately.

preservation or production of ESI under this provision, they may seek a ruling from the Court.

3. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged *solely among*: 1) attorneys for the United States (and their staff, contractors, consultants, and experts); and/or 2) attorneys for Defendants in this case and their staff, contractors, consultants, and experts.

4. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to Section II(B)(1)-(3) above. As provided in Section II(D)(1) below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

C. **Identification & Production of Documents, Things and ESI**

1. <u>General</u>

    a. To the extent reasonably feasible, subject to the limitations set forth in Section II(C)(1)(b) below, the Parties agree to produce documents, things, and ESI in a manner and format that is usable by the Party requesting the discovery. The Parties agree to meet and confer regarding alternative formats if discovery is produced in a manner or format that is not usable by the requesting Party.

    b. The producing Party has the right to object to the manner or format of a production request if it would not be reasonably feasible or if it would be unduly burdensome. If the producing Party objects to the manner or format of a production request, the Parties agree to meet and confer regarding alternative manners or formats of production.

2. <u>Production Format</u>

    a. ESI and hard copy documents must be produced as specified herein. However, nothing herein is intended to waive any Party's right to object to the discovery and/or production sought.

    b. Except as provided in Section II(C)(2)(h) below for specific types of documents and data, where Parties have ESI in its native form and such form is reasonably extractable, able to be produced, and usable by the receiving Party, ESI shall be produced in its native form and must not be converted to another format (*e.g.*, PDF).

    c. To the extent reasonably feasible and not unduly burdensome, paper documents must be OCR-scanned in a PDF format.

    d. PDFs shall be black-and-white, unless a black-and-white format would obscure or degrade information (*e.g.*, color-coded graphs or charts, printed photographs, or redlines), in which case a Party may seek a color PDF. Nothing in this provision prevents a Party from scanning and producing paper documents as color PDFs, nor does anything in this provision prevent a Party from producing color PDFs if they choose.

    e. Documents must be produced in a manner that clearly reflects the manner or location in which the documents are maintained in the ordinary course of business, where such information is available. Breaks between files must be noted either by a separator sheet (to be provided by undersigned counsel for the United States) inserted between files, or by a separate document that indicates the Bates numbers of the first and last page of each file.

    f. If a document has been prepared in several copies, or additional copies have been made that are not identical (or are no longer identical by reason of subsequent notation or other modification of any kind whatever), each non-identical copy is a separate document.

g. Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents (*e.g.* JAMALUDDIN or U.S.). For native files, which cannot be Bates-stamped, the Parties will produce the native files with either the original file name, if any, or a unique numerical identifier.

h. Specifications for Specific File Types:

    i. Emails will be produced in their native form, if such form is usable by the receiving Party. Parties agree to meet and confer regarding usable forms of email production. The Parties agree to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails.

    ii. Audio files and video files should be produced as native files, unless the native form is a proprietary format, in which case if the files can readily be converted into a non-proprietary format that can be played using Windows Media Player, the producing Party can produce in that format.

    iii. PowerPoint files should be produced as native files with all notes unaltered and viewable for each file; to the extent reasonably feasible, Excel or other types of spreadsheets shall be produced as native files with all cells unlocked; and social media content (including comments, "likes," sharing, and other interactions with the posts) shall be produced as PDFs, including information about the participants and the date and time of the communications. For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the Parties will meet and confer before making any production to attempt to agree on a reasonable form of production.

3. Production Specifications

   a. Responsive documents and ESI will be produced via files upload to an electronic file transfer site, in accordance to the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties. In the case of documents and ESI produced by the United States, responsive information will be produced via files uploaded to the Justice Enterprise File Sharing System (JEFS).

   b. Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates ranges. If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

D. **Privileged Documents, Things and ESI**

1. If any discovery request appears to call for the production of documents, things or ESI covered by Section II(B), the responding Party is not required to produce or identify such information on a privilege log, except that if a Party plans to use any documents, things, or ESI covered by Section II(B) to support a claim or defense in this case, the Party shall either produce the documents, things, or ESI, or shall identify the documents, things, or ESI on a privilege log. Nothing in this section is intended to modify the Parties' obligations (or exceptions thereto) to maintain or produce privilege logs.

2. Inadvertent Disclosure of Privileged or Protected Information

   a. The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, common interest privilege, and/or applicable governmental privileges (such as deliberative process) does not operate as a

       subject matter waiver in this case if: 1) the disclosure is inadvertent; 2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error.

    b.    If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving Party within 15 business days of discovery of disclosure and provide the production date, number, and volume of the disc or drive on which the production was produced ("production media"), and the Bates numbers or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

    c.    If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates numbers or Document ID (for native files) of the item it believes was inadvertently produced.  Within 15 business days after receiving notification, the producing Party may make a written request for return of the material.  If the producing Party does not send a written request for return of the material to the receiving Party within 15 business days, the receiving Party may operate on the presumption that the producing Party has waived all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

    d.    When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party.

    e.    If the receiving Party must destroy or delete production media (*e.g.*, CD, DVD, thumb drive, or downloaded files) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate

1 copy of the production media minus only the inadvertently produced material within 15 business days of its written request for return of the material to the receiving Party.

### III. MISCELLANEOUS

A. The Stipulation may be executed in counterparts.

B. The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

C. None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request unless otherwise provide by law or the Parties jointly agree otherwise.

Agreed to by counsel for the Parties:

Dated this 3rd day of September, 2021.   Respectfully submitted,

**FOR THE UNITED STATES:**

REBECCA B. BOND, Chief

/s/ Stephanie M. Berger
KATHLEEN P. WOLFE, Special Litigation Counsel
KEVIN J. KIJEWSKI, Deputy Chief
STEPHANIE M. BERGER
ELIZA DERMODY
JOY LEVIN WELAN
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
Telephone: (202) 353-5101
Stephanie.Berger@usdoj.gov
Eliza.Dermody@usdoj.gov
Joy.Welan@usdoj.gov


**FOR THE DEFENDANT:**

/s/ Thomas P. Fehér
THOMAS P. FEHER
LeBeau Thelen, LLP
5001 East Commercenter Drive, Suite 300
P.O. Box 12092
Bakersfield, CA 93389
Telephone: (661) 325-8962
Fax: (661) 325-1127
tfeher@lebeauthelen.com

1  PURSUANT TO STIPULATION, IT IS SO ORDERED.

2  Signed this ___8th___ day of __September__, 2021.

4  JENNIFER L. THURSTON
   CHIEF UNITED STATES
5  MAGISTRATE JUDGE